Good afternoon. Illinois Appellate Court First District Court is now in session. The Fifth Division, the Honorable Justice Mathias W. Delort presiding. Case number 19-1905, People v. Marvin Treadwell. Good afternoon, everyone. Welcome to the Illinois Appellate Court First District Fifth Division. We'll ask that the lawyers who are going to argue on the case today please introduce themselves and tell us whom you represent beginning with the appellant. My name is Deborah Pugh of the Office of the Appellate Defender and I represent Marvin Treadwell. And for the state? Good afternoon, Assistant State's Attorney Sarah McGann on behalf of the people. All right. Thank you very much, Counsel. We'll allot about 15 minutes for each side. We may extend that if we have a lot of questions. As you know, please remember that we have read the briefs and are familiar with the facts of the case. With that, Ms. Pugh, you may begin when ready. Okay, thank you. And I'd like to reserve time for rebuttal as well. Yes, we'll give you five minutes for rebuttal as well. Thank you. So I would like to focus today on the first issue regarding Chester Slaughter and also counsel choice, as well as to talk briefly about the third issue involving the sleeping judge but obviously I'm happy to take questions on either of the other two issues. So the Illinois Supreme Court's order here was clear. It granted Chester Slaughter a stay of his suspension to, quote, allow completion of pending murder trial. That trial was not Marvin Treadwell's, even though his trial was set to begin just days later. It was only for the unrelated trial of David White. Chester Slaughter was not authorized to represent Marvin Treadwell during this time. He sought and received permission only to represent David White, and to whatever degree this court finds that it was a general stay, not specifically for David White, that stay was received through fraud. At the time of the suspension, Slaughter had been representing Treadwell, who was charged with the murder that occurred when he was 17 years old for four years. Treadwell's trial was set for October 18, 2004. And in September, the Illinois Supreme Court ordered Slaughter's suspension to begin on October 15, three days before Treadwell's trial was to begin. And he was being suspended for an issue of moral turpitude, that he had given false and misleading information in a credit application, multiple credit applications. Ms. Pugh, I have a question for you. I think we all recognize that the Supreme Court granted his motion specifically for Defendant White. What are you alleging was the negative impact of Mr. Slaughter trying the case on behalf of Treadwell when he wasn't specifically authorized to do that? I think we can all agree that that was a fact, but what was the result of that? Do you think the result would have been different had he asked for permission to try the case for Mr. Treadwell? Well, that is sort of jumping to the case law involved here. That's sort of the question of whether or not it's required to choose to prove prejudice. And so in cases like the Illinois Supreme Court case Brigham, the idea was that if somebody is not authorized to practice law, if it is related to a small tactical error, like the failure to pay ARDC fees or something like that, then you do have to show prejudice, that it's not a per se error. However, if it's something that actually relates to your abilities as a lawyer in terms of your moral turpitude or your ability to practice law, then it's not necessary to show prejudice. And so the question that you're asking sort of makes the assumption that it's necessary to show prejudice, but the case law really assumes that it's not necessary to show prejudice, including there aren't many cases in Illinois about this for obvious reasons, that it's not that common that someone is practicing law, certainly not in this very strange circumstance, but even in general. But when you look to federal cases like Novak or Salinas, if you're talking about somebody who's practicing law, who's not licensed to do so for a reason of moral turpitude, that he was found to have been giving false and misleading information, he gave false and misleading information to the Illinois Supreme Court. Well, let me ask you, you say not licensed, I guess you're using it in an analogous way, but he was licensed. Oh, yes. No, I mean, yes, he of course, he was he was licensed at that time and suspended. And that leads to the question is, are you, you know, is there such a thing as being sort of partially suspended? Is there a case on that? Because the Supreme Court basically unsuspended him. And, you know, there is a comment in the order that is regarding a pending murder trial without referring to which one or which ones, but are you, is there something that's like a partial suspension because that's that's what you're advocating. I've been looking into this and I can't find any cases about it. But what I found was that if you look in the common law record on pages 605 and 607, so it's on 605 and 607 in the common law record, what we have is a documentation about his previous suspension, which also occurred while he was representing Treadwell and for that he was given a general stay. And so that there's on page 605, it says that the stay was, he was stayed entirely by a period of probation or stayed and then on 607, the actual order says that it was stayed in full. So to me, that sort of indicates that the language in the order was not surplusage. So this was, he sought and received it for solely to represent white. But I want to stress that even if this court finds that that was a general stay because again the case law is not clear, we can only go by what the language actually says in the, on the order. My question is similar to Justice Delores but a little bit more narrow. If the Supreme Court lifted, allowed him, lifted the suspension and allowed him to practice. Is there licensure, licensure just for one case? I mean that's kind of what your argument is that if it's, if they've listed the suspension and stayed the suspension and allowed him to practice. It goes back to Justice Delores question of, is there partial licensure? I think he said partial suspension but I'm asking is there partial licensure? So you're just licensed just for this one case and anything else, the license doesn't extend outside the parameters of that one case. Seems to me that that's what your argument is. And, well, it's really, I mean I've been looking into the rules of the Supreme Court rules about this. I mean, I don't know what the actual answer is. I don't know what powers the Illinois Supreme Court has regarding it. I mean this sort of goes to the idea that an evidentiary hearing would be necessary to sort of even figure out what the nature of the suspension was, because we're sort of grasping at trying to figure out what actually were his, I don't know what the Illinois Supreme Court is able to do. I don't know that that's what the. That's not my question because I think we can assume that when the Supreme Court says you're suspended from the practice of law, that means you can't practice law it's not that you can practice it a little bit, or you can practice it sometimes it means you that by granting a stay the state only applies to Mr. White, and anything outside of that is not licensed, because it the license is suspended. The fact is when you have a suspended license it's like you don't have a license for that period of time of the suspension so I'm trying to understand your argument with respect to this day, and how that applies or doesn't apply to Mr. White because the rules don't really give us much guidance either, but that is what it that's what slaughter was seeking and that's what slaughter received. And so we're sort of left with a question there about what about what the Illinois Supreme Court actually meant when they said for the pending murder case but I do want to talk about what actually was in that motion and that even if we do say this was a motion that the Illinois Supreme Court understood the level of misleading information that he was providing here. While he was already being suspended for providing false and misleading information. This, this, this, this one short document is just was rife with with misleading statements he says that he was making arrangements for other attorneys to handle his other cases. Of course we know that's not true because we know that judge turn back didn't even allow him to withdraw which we'll talk about about Council of Choice. He says that he was also working on finishing up his other cases so he wouldn't be working on anything but David white, but we also know that that's not true because tribal tribal trial was supposed to start three days after the suspension would begin, and he made no effort to move it up earlier so that would be occurring before the suspension. And there's also a line that he uses in the motion for the suspension that's really interesting and I didn't highlight it in my brief but it's on page 453, and it's paragraph four. He says slaughter says, if the state completes its case, and the defendant is found not guilty on that date meaning if David white is found not guilty and on October 12 respondent would be prepared to begin his suspension as ordered. So he knows that he has this first degree murder trial for travel coming up just days after that the suspension would be starting on the 15th and Fred So what does he mean what would he even be doing what is he saying that that he would then just not show up, would he say that would he be practicing without a license for sure then they're just, if this is this. He does have a general stay. It was obtained through fraud and through further moral turpitude. And again, there aren't that many cases about people obtaining obtaining a page. So, let me ask you a question. As far as Mr slaughter is concerned, didn't he ask a number of times to withdraw from the case and the court would not allow it. What happened was this is sort of moving on to the second to the to the second part about Council of Choice what happened was so slaughter had not shown up at tribal's trial for a year. And then, so on February 4 2004 tribal said to judge Raina who'd been overseeing the case for four years that I'd like to fire slaughter and be appointed a public defender and judge Raina who'd been seeing what slaughter had been doing and not doing said, absolutely, let's get slaughter out of here let's get you a public defender. But then over the next couple of weeks, he went before several different judges because there had been. We had a co defendant and there were some substitution of judge things going on so that he went before Judge claps, who says, yes, absolutely new public defender but we need to get slaughter in here but then you've got to get your public defender up to speed, that he goes before Judge Truman who says yes, absolutely, like I respect judge Raina his order you get a new you get a public defender, but I want you to be before the judge that you're going to be permanently in front of, then on March 12 so just five weeks after judge Raina had granted his motion for to fire slaughter judge turn back shows up, and apparently had not even glanced at what had happened at the last hearing that he'd had with judge Raina and slaughter shows up, and he has to withdraw he doesn't admit that he's been fired, that his that that judge Raina and other judges that judge Raina had had agreed that he should be fired, that he could be fired and that the other judges had obviously supported that. And instead, he just says, well they're not paying me he complained about not being paid about after this complicate things that the court made that ruling and forced him to stay in when the idea was to go. Well it complicates things in the sense that he didn't admit that he'd been fired, which, which so representing someone without even admitting that you've been fired and then asking for money, and then judge turn back I mean a council of choice is an absolute absolute right and and tribal emotion had already been granted so tribal was denied his council of choice but going back to his, this is something that he should have going just circling back to the motion for his for the stay. If this is true that judge that judge turn back did not let him withdraw. Why isn't he mentioning this it does complicate things and it complicates things so much that he hit it from the Illinois Supreme Court, the Illinois Supreme Court who had already suspended him once for neglecting criminal matters would not want you he was trying to hide from the Illinois Supreme Court that another defendant was trying to fire him, and that he denied it he did not admit that he'd been fired and in fact he tried to get money for me and tried to get appointed. So he's hiding this so it only it only it adds to the fraud. It just says that yes he was denied he wasn't allowed that judge turn back, having not read the record denied denied Treadwell the right to counsel of choice, and then he doesn't reveal that to the Illinois Supreme Court, this is a very serious document that he's filing with the Illinois Supreme Court about his own suspension, and he's leaving out everything about the representation of Treadwell, in order to just to get this little suspension for this one case that then you know whether or not it even applies to Treadwell is is is really unclear because they do know how to do a general state, they want to do a general state and this is not what this is not say a general stay council in a simple answer I know judge, Justice Cunningham already asked you what's the prejudice tell us a prejudice. Well, the point about about this in this case is that if you look at Bingham if you look at me know if you look at the federal cases like Novak and Salinas, the, there is, they don't have to show prejudice in a case like this to have a big to be represented by someone who is not properly licensed either due to broad, which he did commit I think I don't think that there's any argument that he was purposely leaving out essential information and it was misrepresenting his intentions to the Illinois Supreme Court. If you're if you're not properly licensed if you are licensed to the broad, or if you're in, or if you're not properly licensed, you're not a real lawyer, and that there, you don't have to show prejudice Bingham talks about I mean Bingham go or Brigham goes the But when you look at Brigham, it really shows that in a case like this. This is where you don't actually have to show prejudice is very hard to show prejudice about how would you show that, that, that this person who was engaging in this kind of moral turpitude, how it affect this is this is this is an issue of engaging involving the judicial integrity and the judicial process and so in these cases you don't you don't show prejudice because it's a per se error. And so that's, I'm sorry, what, let me, because your time is almost up here so let me ask you what is the relief you're requesting, are you requesting for a fresh second stage hearing with an amended petition perhaps or are we going to a third stage. I'm a little unclear on exactly what you what you're asking us to do. I think in general the Illinois Supreme Court in these cases, does not want you to skip a step and so well I believe strongly that this should be a third stage hearing. I think that I think that truly to follow to go absolutely by the books. It should go back for second stage in which Council will then amend the petition in order to include these issues so then the state has a chance to respond, and the judge can does the court have the does the defendant have the right to amend the second stage but SEC petition at the second stage include anything, or just the issues that are sort of floating out there right now. I don't know I don't know the answer to that. I think that I'm, I think in this case, that's, that's maybe an academic point because I'm not sure that there are any other issues that are floating around because she's already been, but I don't, I, I would think that possibly I mean I would think that would be within this court's right to say you can only amend these issues that we've that we found to be proper. And who was the judge who was allegedly sleeping was that Rolf Reyna. No, no, no, it was Judge Dernbach. Okay. And so I'll give you a couple more minutes to address anything else you want to address and see if we have more questions from the panel. I just, I just wanted to, I mean the the sleeping issue involves three involves three affidavits that have to be taken as true and so this is something that would really need to be developed at a third stage hearing. And so I think, I think I'm just going to leave that and say this really requires a third stage hearing. I just want to stress Council of Choice for a second just to talk about the US Supreme Court Gonzalez Lopez that talks about this is Justice Scalia, really stressing the importance that that defendants have an absolute right to counsel choice it's one of the tiny tiny handful of errors that are considered federal structural errors and treadmills right to counsel choice was denied the state says that the state places the blame entirely on Treadwell, saying that he personally failed to follow through with a pending motion for a new lawyer, but that's not true there was no pending motion the motion had been granted, and says that it was Treadwell's fault that that Judge Dernbach ignored Judge Reyna's rulings. Well the previous two judges didn't ignore Judge Reyna's ruling, and Judge Dernbach had a responsibility to know what was going on and this is not like minutiae of things that happened years before this is what happened five weeks before on the very last court date that Judge Reyna who had been overseeing it for four years. This was the last day this is not a roll up your sleeves really you know get out get out your magnifying glass this is right there. And this is in this in nobody in courtroom spoke up for Treadwell. And the state doesn't even argue that it was done that the request for a new lawyer was done for purposes of delay that's the only way emotion for a new chip for a new lawyer can be denied if it's for purposes of delay, but here Treadwell did it for the So I just really want to stress, I know I'm out of time I just really want to stress the Council of Choice issue is a very powerful issue it's an extremely important issue for the for the integrity of the judicial system that the US Supreme Court cares enormously about the Illinois Supreme Court cares enormously about here the motion was granted but then it was ignored. And so this for this, this should go back again for second stage, in order for it to be added to the petition but this is this is the kind of issue that that I would hope would really get this court's attention because this is quite serious. And so if this court has no further questions. Oh wait for my rebuttal. Any other questions from the panel. No, no. All right. Thank you, Miss Pugh Miss McGann, you may proceed when ready we'll give you approximately the same amount of time. Thank you, Your Honor, it may please the court. Your Honors, if we could just go back a little bit here and just point out that post conviction Council did file a, you know, rule 651 C certificate so that created this rebuttable presumption that he provided reasonable assistance and I think Council glossed over that and we went right to the heart of the issue here, but the reality is that, you know, Council, albeit his initial Council did meet with defendant or discuss with defendant all of his claims and shaped the claims that Council felt would adequately present, you know, petitioners constitutional deprivations. Miss McGann could we speak to the issue about the suspension of Mr slaughters license, and the fact that he neglected to tell the Illinois Supreme Court that he had an upcoming murder trial, and therefore your opponent's point that he was basically committing a fraud by representing Mr Treadwell, when he knew very well that he'd been suspended. Can you speak to that issue that I think that's, I'm much more concerned about that than the 651 issue. Certainly, and I think I only pointed that out because there was no per se, you know, viable per se ineffective assistance of Council claim here so that's why that was not presented and that's because we have, we do have Mr slaughter, you know, admitting to the Supreme Court, and that the sentencing matters here. So and it's, you know, maybe it is minutiae but the white trial was commenced and continued for the state to bring in other witnesses. There was some uncertainty about, you know where that was headed and that may perhaps the sentencing date would be much further. Let me ask you this he did go, he did go on to later represent Mr Treadwell without going back, couldn't he have gone back to the Supreme Court for a motion, and then they, then we wouldn't be here would we, I mean it would be clear. I know you are still suspended and you may not represent that defendant, or since the trial is so imminent go ahead. I mean wouldn't that have been the thing to do. Certainly, and I'm all about that Monday morning quarterbacking and all aspects of my life here, he did not do it and yes, here we are now. I take umbrage with calling that that's just good lawyer, good lawyering, and I think he's required to do that if you're suspended by the Illinois Supreme Court, which is the ultimate authority on the practice of law in this state, and they say you're suspended. Seems to me that most lawyers will every lawyer who wants to practice would say, Oh, I better ask the court for me to stay in this so I wouldn't call that Monday morning quarterback and I think it's good lawyering. Certainly, and yes and so I'm not going to speak to his caliber but what he did front was that he had a murder trial and other pending matters so he didn't, he didn't only solely focus on the white murder trial although it's certainly highlighted and the most, you representing clients whose cases were imminent. That's not what I, that's not the takeaway I got from reading the substance of what he was thinking, is that what you're saying, no I'm saying he does he does. He does mention that he has other pending matters. So no, I'm certainly not saying that he is asking for, you know, this stay so that he can work on Treadwell, but the fact remains that he was still duly licensed. He was not suspended. When he represented Treadwell at trial. So, that remains, and so, to ask you, I'm sorry for interrupting. I want to get to the same point I asked your opponent. So, you're saying there was no prejudice. Is that your contention. Miss Pew said that it was prejudice per se because he was suspended he knew he was suspended. He obtained leave by fraud and the leave that he obtained wasn't even for this particular defendant. It was for somebody else so as far as she's concerned that's prejudice. What do you say to that. Well, I would say that there was no prejudice because and we don't have an argument here presenting any prejudice, but if counsel was able and allowed to represent white, which was also a murder trial so you know this level of severity. The same here with Treadwell. No, I can't say that there was any prejudice in fact he had been representing him for four years, and he was not disbarred he was not suspended at this time. And so without knowing what the argument for prejudice would be. No, he wasn't he was he was represented, and the trial went through with, you know, without a hitch, if you will. But here we are now in hindsight, focusing on what he represented to the Supreme Court the fraudulent nature there, which I just want to add in, you know, his suspension. I'm not going to downplay it at all, but it was based on, you know, financial misrepresentation so if we're really going to dig deep here. I'm not sure that we can extract prejudice from from what his suspension was based on and I don't want to speculate in any way, but there's not a direct correlation so yes well he may have. You know error by omission by not asking for the Supreme Court to sanction Treadwell, you know, per se, I don't think that we can deny that he he remained licensed, and he remained. He remained an attorney active with the Illinois bar, and that's never more apparent because he did actually proceed on the white case. It's certainly you know difficult facts here, and I'm not, you know, trying to speak for Mr. I have to ask you. Again, wasn't he suspended in September of all for. He was suspended. Yeah, there was and I'm sorry, Your Honor, I don't have his previous suspensions but yes there were previous ones. That's the information I have. Yeah, but he was the trial went forward in October before, and he was only allowed to practice for the trial the white trial, isn't that true do you dispute that. I think that that is what the Supreme Court sanctioned yes when they when they responded to his memo, but I can't, I can't find, you know, I just don't know where the argument is that he, he was only licensed for that case, especially where he did front and address that he did have other pending matters. I don't mind that he was not about the tribal case I'm sorry again, that's not the argument that I extrapolated from what your opponent is Pew said she didn't say that he was just licensed for that she said that it's. If you are licensed specifically this is what I might take away and she can respond later. If the Supreme Court license gave him a stay for that particular case that is the only case that he is legally under the Supreme Court's order to be permitted to try, and he couldn't. Your argument taken to its logical extreme would mean that any other cases that we have pending if they were imminent he could go ahead and try those two and miss Pew said that is absolutely not what the Supreme Court intended. So I'd like you to speak to that and I think that's a variation of what Justice Connors just asked you. Certainly, and I think what the case law, you know, tells us is that a suspended or disbarred attorney stands in stark contrast to one who is merely under investigation. So, under investigation versus stay right so I do think this really hinges on the Supreme Court's order but I'd like to point out that this is an attorney who agreed to the terms of the suspension, right, and was forthcoming in some regard. Certainly, while he did agree to the suspension, and I stand on the argument that he did remain duly licensed and unsuspended. At this point, now to parse out that you're only allowed for one certain case, you know that's the Supreme Court's order. Certainly I can't speculate beyond that because with his license. You know the terms are that he still had his license but how the Supreme Court's order I truly can't speak to that beyond, you know what I see from the case law here and there is some, you know, these are. Can you look at the gamino case the gamino case which is I think very definitive here it says a council is not allowed to practice unless they're duly licensed and qualified. This lawyer was licensed but was he qualified by the suspension from the Supreme Court, how could he be qualified to practice. No and Justice Connors I think that's a great point. I think that, again, a lot of speculation here it had the Supreme Court not sanctioned that he could, you know, do this white case this murder case, and it wasn't like there was a lot of details Now perhaps it'd be different if he was asking, you know, to proceed on a retail theft case, but these are both murder trials so just to that point, that would be my argument. Mr. Gann let me bounce back to the 651 C for a moment. And I'm looking at my notes here and it seems, am I correct the first attorney was the one who filed the certificate is that correct. Yes, Your Honor. And then there was a second attorney who popped in who had almost no communication with the first crime. So the second attorney both assistant public defenders, and they, the first, the first one he represented him for, you know, almost, I think it was 2007 until 2000, whatever it was it was until 2017 for several several years and we had that council who, you know, really went through the myriad petition pro se petitions review them, did all of the legwork there. I did file a motion to cite additional authority the people the Smith case, which really speaks to this issue so initial council reviewed did all the amendments, and it was sort of ready baked with you, if you will, on a platter and then yes there was is the motion to cite additional authority still pending. Oh, I apologize, I should have already known that so it's Smith is cited just this court's opinion in Smith, so it will be pending then. So, excuse me for not knowing that if that was, I believe, I believe it was. Let's begin what I'm trying to get at here, and you feared way off my question. Okay. My question was, it sounds like there was a second attorney who did not file a certificate right yes or no. Correct. Okay. And that second attorney had almost no communication with the first one. And the question is, you seem to be relying on the fact that there was a second attorney who cleaned things up but isn't. How is the second attorney supposed to know what the first one did, I mean, I don't know if that makes sense but. Oh, no, certainly are and I think, you know, the rule does not. If you look at the plain language of rule six 51 see there's, you know, no direction or requirement for both of those attorneys to communicate once that certificate is filed there's that rebuttable presumption that the pro se petitions and pleadings have been And certainly here we have the second attorney who, it's clear that he, he did review it all and did make sure that it was all you know wrapped up in a bow because he added some exhibits just to some of the issues that were necessary believe. Again, isn't a rebuttable presumption just that something that can be rebutted by other facts, and are there some facts here that I'm sure your opponent would order would offer rebutted the presumption that the second attorney was up to speed. I mean, you, you, if there's a rebuttable presumption, and the facts that are put forward rebutts that presumption where does it leave us, are you saying that there were no facts here that part of that presumption. Yes, I don't think that that that council petitioner provided any facts to her about that presumption I think that we can rely on the fact that the initial assistant public defender filed the 651 C, and then the second assistant public defender argued at the motion to dismiss and there's no indication that, you know, he did anything but argue based on all of you know all of that was contained in the petition in fact I think all that was contained in the record, it's not just the petition this record as well right Certainly. Yes, and I think that we even have that public defender telling the court, you know I I've reviewed all of this to make sure it's all intact and there were, again, many more pro se pleadings that the petitioner in the interim had been filing so the, I think he was doing is due diligence that public defender to indicate to the court that this, yes, this is ready to go there is no need for another 651 C certificate, because that work has already been done here, and, and as Smith tells us even just, you know, from, from this attorney and then there's the other it certainly there, we can we can rebut that but I don't have anything here to present, and our argument would be that it was seamless, if you will, it took much time, but to go back and require that that second assistant public defender sort of do a do over. I mean that would certainly cause be a waste of time I think the Smith court says just in resources, because that work had already been done. Could we talk about the right to counsel of your choice could we could you address that issue, please. Certainly. Council of the defendants choice because your, your opponent spent a great deal of time on that issue and I think we can all agree that it's an important issue. Sure. Okay, so I would say, you know, if you just look at the timeline here. Petitioner was represented by Mr slaughter for four years. When he made a request for public defender. And that was March 2 2004. And then there were several, you know, following court dates I think we, we all acknowledge this work and can use. Yes, Miss McGann as justice the Lord said we've read the facts and we are very familiar with the timeline what I'd like you to address is what happened when the judge Dernbach made attorney slaughter stay on the case, I can see no. I saw nothing in the record that suggested that Mr slaughter said you know, three other judges said that I ought to be off the case and, and this defendant doesn't want me on the case your argument is that the defendant should have spoken up himself. I mean, he has a lawyer right there. And do you put any responsibility on the lawyer to tell the judge what had occurred on before three other judges before it came to judge Dernbach this Mr slaughter have any responsibility for accurately relating to judge Dernbach, what had occurred. Sure, I just would have to go back to the fact that post conviction counsel shaped the argument, the way that defendant, you know, presented it and, you know, did that in the most reasonable way which was that. Ma'am that goes back to my question about whether it was appropriate for him not to have amended the defendant's petition in the first place remember we asked that question a few minutes ago, and you said no it was fine. But now you're saying that, based on what the pro se defendant had written, then that's how he argued it. So we're kind of going around in a circle and I'm trying to get at, do you think there was any responsibility on Mr slaughter to bring to the attention of judge Dernbach that slaughter had been fired, and that Mr treadmill has been granted his, his motion had been granted by judge two men judge claps and judge arena. Certainly there may be but we just have a record that says he wishes to withdraw, and there's no indication, the defendant remain silent, that, that's my question. I'm asking, is there a risk was there at that time, a responsibility on Mr slaughter to say to speak up, so to speak, speak up on behalf of his client, you know let's let's be realistic about what goes on in the courtroom there's a client who is a young man standing there and his lawyers there. Is there a responsibility on the part of that attorney to speak up and say the judge Dernbach judge I know you're asking me to stay on the case but just judges Truman and Raina and collapse said that I want to be off, and this, this might be my client doesn't want me on the case. I mean, does he have a, I'm just asking. And I guess my point was that I don't know what transpired between that time, because defendant Patricia did not speak up and maybe things had changed at that point. Now was it incumbent on me, we have a transcript that tells us what took place in the courtroom, so I think we can read the transcript and see what the judge said to the lawyer what the lawyer said to the judge, and the nothing came, nothing is written about what the defendant said so my question is, since we know from the record that the defendant clearly didn't want this lawyer to represent him, is there a responsibility for Mr slaughter to spoken up. If that was still petitioners wish, but petition it did not stop petitioner for making that request on those other occasions. So, I guess I can only point out that this was an occasion before you know before we have now the assigned judge which I think was indicated to petitioner and he remained silent, but was able to make the request beforehand. Now was it incumbent on the judge to go back and scour the record I'm not seeing anything presented that he would have been able to glean that there was that request and if counsel can show otherwise or present that certainly then but I think the issue here is, you know that defendant did not make the request again, and he had made it prior. Again, your, your time is up but let me ask you one question about the sleeping judge issue. It's your position, is it not that the affidavits are insufficient to trigger an evidence you're hearing. Yes, that would be our position, and how I'm a little skeptical that position, because my question would be, what do the affidavits need to say to trigger an evidence you're hearing about a sleeping judge. I mean do they need to say the judge showed up in his pajamas or something we got was a two three people who said the judge was asleep for parts of the trial. Well, your honor. I think that's a great point. These are three affidavits that are provided by defendants friends or family, and we don't have much fleshed out there and I just have to point out that you know the case law tells us that, you know, a sleeping flesh that out as you pointed out if it's not fleshed out, and there are three affidavits that which you suggest you're inferring maybe self serving or not accurate. That's what the hearing would be designed to ferret out isn't that the reason for hearing. Sure, and I would say, based on, you know, based on those affidavits. I don't think they warranted a hearing because even if the judge justice the Lord's question why not, what would they need to say, other than what they said to warrant a hearing. Well, I, I think they would have to say that the judge left the room, because that that would be, you know, the argument here is that the judge was was there was some presumptive error, and was not engaged in this trial, but the case law tells us that you would have to be physically absent. So are you saying that if the judge was asleep the whole time sleeping clearly enough that he was snoring if he hadn't left the room is okay. Is that what you're saying. I don't think we have those details in there but certainly if there was, you know, the indication that the judge was sleeping through the whole trial, maybe that would warrant a third stage hearing, but what we have here are, you know, sort of elusive facts indication that the judge was sleeping. Now, I don't know if that's someone pensive closing their eyes, perhaps, but we have only what we, you know, see in these affidavits again provided by three individuals who are there for the defendant, and it's, it's simply not akin to an absent judge, which gets back to justice the Lord's question of wouldn't that warrant a hearing, let us know what really is going on. Anyway, you've answered the question. Thank you. This began anything else you want to say to wrap up. No, thank you, your honors, I would just rest on all the other arguments contained in our brief and thank you. Any other questions from the panel for the state. All right, Miss Pew we're back to you you've got five minutes for reply. I, I'm under the impression that the justices on this panel sort of know what I'm likely to say on rebuttal in terms of that yes he has he had pending matters but he said that he was going to put them on to other people or hurry them up. I mean there are so many things to be saying about about what the responsibility in terms of console choice for somebody who's been in jail since he was 17 to protect his own right to counsel choice when he's surrounded by adults who have gone to law school who are doing nothing to help him. We all know all of that, but I did want to clear up some confusion about the second issue which is involving people versus Smith, and the 651 C issue, you did this court did actually allow Miss begins motion for to petition, but and then is finally represented by somebody who does not file the petition. Smith said that in some circumstances that can be okay however it's not okay in a case like this, where the where the 651 C certificate is rebutted by the record and by the end by the petitions. And so, and so I'm just maintaining that Smith has no has no relevance to this particular case because in Smith. That was a standalone issue about the 651 C certificate. And so for all the reasons that we discussed, it's very necessary here to go forward with further hearings in order to develop the claim about about whether he was suspended about the fraud about counsel choice and about sleeping where we're taking these we have to take these up and David such as true, and I don't think that we live in a country where judges can sleep during trial and it's not an error, as long as they are physically present. And so for all of these reasons, would ask this court to remand for further for further post conviction hearings. Thank you. Any other questions from the panel. Hearing none. We thank counsel for their arguments on this interesting case, the court will take the matter under advisement. This concludes the arguments for today and court staff will remove everyone from the zoom room except for the panel members.